IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DISTRICT

SHEILA RAGLAND, AS THE ADMINISTRATRIX OF         PLAINTIFFS
THE ESTATE OF MARIO CLARK, DECEASED,
AND ON BEHALF OF THE WRONGFUL DEATH
HEIRS OF MARIO CLARK, DECEASED

VS.         CIVIL ACTION NO.: 3:22-CV-69-DPJ-FKB

CITY OF JACKSON, JAMES DAVIS, ANTHONY         DEFENDANTS
THOMPSON, DARRELL ROBINSON, DARRELL
MCDUFFIE, ENEKE SMITH, in their individual and
Official Capacity, and John Does, 1-4

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7(b)(4), the City of Jackson, Defendants[1] (hereinafter, "the City"), by and through the undersigned counsel of record, submits this Memorandum in Support of its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and other applicable law, and would hereby in support of the same show the Court the following:

### INTRODUCTION

On February 14, 2019, the Jackson Police Department responded to a call for assistance regarding Mario Clark, who required help. Shelia Ragland informed the dispatcher that Mr. Clark, who had a history of mental illness and potential drug influence, needed assistance. JPD officers apprehended Mr. Clark, who was subsequently transported to Central Mississippi Medical Center by ambulance.

---

[1] The term, "City of Jackson, Defendants," for purposes of this motion includes the City of Jackson and Former Chief of Police, James Davis, in his official capacity.

1

Tragically, Mr. Clark was pronounced dead on February 20, 2019, due to Geodon toxicity resulting from an injection he received from the paramedics.

On February 21, 2022, the Plaintiffs filed the instant lawsuit alleging 42 U.S.C. § 1983, excessive force, bystander liability, and wrongful death. The Defendants initially sought dismissal of the Plaintiffs' claims through a Fed. R. Civ. P. 12(b)(6) motion, asserting various grounds, including claim splitting and statute of limitations violations. Now, in addition to the City's Motion to Dismiss, the City seeks dismissal of the Plaintiffs' Complaint because there are no genuine issues of material fact, and the City is entitled to judgment as a matter of law.

## STATEMENT OF FACTS

On February 14, 2019, the Jackson Police Department ("JPD") responded to a call for service at 2738 Pinedale Street, Jackson, Mississippi 39204 relative to Mario Clark ("Mr. Clark") who needed some help. See *Plaintiffs' Complaint*, Document # 1, ¶ 12. Ms. Ragland explained to the dispatcher that Mr. Clark had a history of mental illness and that he may be under the influence of drugs. *Id.* at ¶ 13; see also ¶ 14. When JPD Officers arrived on the scene, Ms. Ragland told them "… there was an altercation between Mario Clark and James Kidd." *Id.* at ¶ 16. The JPD Officers detained Mr. Clark.

American Medical Rescue ("AMR") arrived on the scene to find Mr. Clark lying on the floor of the living room in handcuffs. Exhibit "A", AMR Records. Steven Dortch, one of the paramedics on the scene wrote the following about the encounter.

> "ARRIVED ON SCENE TO FIND PT LAYING ON FLOOR OF LIVING ROOM IN HANDCUFFS. AMR 418 WAS ON SCENE WITH TWO PT. PARAMEDIC RODGERS STATED, ***PT WAS BEING AGGRESSIVE, FIGHTING WITH COPS, AND RUNNING AND JUMPING ON FURNITURE. RODGERS STATED FAMILY STATED PT CAME HOME WITH FRIEND ACTING DIFFERENT AND […] GOT INTO ALTERCATION WITH STEPFATHER, RODGERS PT. RODGERS***

2

**GAVE PT 10MG OF GEODON** IM. PT WAS NOT RESPONSIVE TO PAINFUL OR VERBAL STIMULUS. PT WAS PICKED UP BY TWO MAN LIFT AND MOVED TO STRETCHER AND SECURED WITH RAILS UP X2 AND BELTS SECURED X 5. ..."

*Id.* Per the AMR Report, Mr. Clark's chief complaint was a "psych/behavioral crisis" and their primary impression was cardiac arrest. *Id.* AMR transported Mr. Clark to Central Mississippi Medical Center. On February 20, 2019, Mr. Clark was pronounced dead.

On February 21, 2019, the Medical Examiner's Officer conducted an autopsy on Mr. Clark and found that the manner of Mr. Clark's death was an accident due to Geodon toxicity.[2] Exhibit "B", Autopsy Report. Mark LeVaughn, MD, Forensic Pathologist, Associate State Medical Examiner, stated:

> "**This 31-year-old male identified as Mario Clark died as a result of an acute toxic reaction due to the administration of the medication Geodon.** Geodon is an antipsychotic medication with multiple known adverse cardiac and central nervous system effects. Following Geodon administration, he became unresponsive. He was admitted to the hospital, comatose (GCS 3) with a diagnosis of anoxic brain injury due to acute cardiac arrest. He remained ventilator dependent in the hospital for 5 days with additional development of respiratory failure, renal failure and brain death. Throughout his hospital course there was no clinical evidence of excess blood loss. **Autopsy examination showed evidence of non-lethal blunt traumatic injuries consisting of abrasions of the face, wrists and ankles.** There was conjunctival hemorrhage in the right eye. The hemorrhage in the right side of the neck was due to the placement of a dialysis catheter in the right jugular vein. The hemorrhage at the base of the left neck was due to placement of a left subclavian vein catheter. **There were no identifiable lethal traumatic injuries.** Toxicology showed the presence of Marijuana. Medical records and investigative records were reviewed. **With the currently available information and postmortem findings, the cause of death is Geodon Toxicity, and the manner of death is Accident.**"
>
> *Id.*

---

[2] Geodon "is used to treat certain mental/mood disorders (schizophrenia, bipolar disorder). This medication can decrease hallucinations and help you to think more clearly and positively about yourself, feel less agitated, and take a more active part in everyday life. Ziprasidone belongs to a class of drugs called atypical antipsychotics. It works by helping to restore the balance of certain natural substances in the brain." https://www.webmd.com/drugs/2/drug-20575/geodon-oral/details

On December 20, 2019, the City received the Notice of Claim relative to this incident on behalf of Shelia Ragland. Exhibit "A," *Plaintiffs' Notice of Claim*. On February 21, 2022, Plaintiffs filed this instant action – *Shelia Ragland, as the Administratrix of the Estate of Mario Clark, Deceased, and on behalf of the Wrongful Death Heirs of Mario Clark, Deceased v. City of Jackson, James Davis, in his Individual and Official Capacity, Anthony Thompson, in his Individual Capacity, Darrel Robinson, in his Individual Capacity, Darrell McDuffie, in his Individual Capacity, and Eneke Smith, in her Individual and Official Capacity, and John Does 1-4*. The Plaintiffs alleged the following causes of action against the Defendants: (1) excessive force and bystander liability; (2) 42 U.S.C. § 1983 against individual defendants; and (3) wrongful death pursuant to Miss. Code Ann. § 11-7-13. *See Plaintiffs' Complaint*, Document # 1.

## **STANDARD OF REVIEW**

"A party may move for summary judgment, identifying each claim or defense – or part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P 56(a). Federal Rule of Civil Procedure 56(c) states that the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "When the moving party has met its Rule 56(c) burden, the non-moving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings." *Millet v. Huntington Ingalls Inc.,* 2014 WL 5018029, at*1(E.D.La. Oct. 7, 2014).

4

In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 253. "The non-movant cannot avoid summary judgment... by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

## ARGUMENT

**I.     Plaintiffs cannot prevail on their § 1983 claim against the City Defendants because Plaintiff has failed to establish a policy, practice or custom, which was the moving force behind the alleged constitutional violation.**

The Plaintiffs alleged the City of Jackson Defendants "had an unwritten policy and custom in place that enabled its agents and employees to subject citizens to excessive force and to act with deliberate reckless and callous indifference to the constitutional rights of citizens including Mario Clark." See *Plaintiffs' Complaint*, Document #1, ¶ 28. The law is well established that a governmental entity is not liable under 28 U.S.C. §1983 on the theory of *respondeat superior* for the alleged acts or omissions of its employees. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978); *Zarnow v. City of Wichita Falls, TX*, 614 F.3d 161, 167 (5th Cir. 2010). "It is only when the 'execution of a government's policy or custom ... inflicts the injury' that the municipality may be held liable under §1983." *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987).

To establish municipal liability under §1983, a plaintiff must show that (1) an official policy, (2) promulgated by the policy maker, (3) was the moving force behind the violation of the constitutional right. *Piotrowski v. City of Houston*, 237 F.3d 567, 568 (5th Cir. 2001) (citing *Monell*, 436 U.S. 694). The plaintiff "must generally demonstrate at least a pattern of similar violations that caused the violation of constitutional rights." *Pernell v. City of Columbus*, 201 W.L. 1737639 *5 (N.D. Miss. 2010) (quoting *Thompson v. Upshur Co., Texas*, 245 F.3d 447, 449 (5th Cir. 2001)). The policy must be "persistent, widespread, common and well-settled." *Brown v. Callahan*, 623 F.3d 249, 246 (5th Cir. 2010).

The Plaintiffs allege that the City of Jackson Defendants had an unwritten policy and custom enabling excessive force and disregard for citizens' constitutional rights. However, municipal liability under §1983 requires the demonstration of an official policy, promulgated by the policymaker, as the moving force behind the constitutional violation. The Plaintiffs have not identified such a policy or official policy maker. Therefore, the Plaintiffs' § 1983 claim against the City should be dismissed with prejudice.

**II.     Assuming, *arguendo*, the Plaintiffs § 1983 claim prevails the JPD officers acted objectively reasonable under the circumstances.**

Plaintiffs allege the JPD Officers used excessive force during their encounter with Mr. Clark. To prevail on an excessive force claim, a plaintiff must show "(1) an injury (2) *which resulted directly and only from the use of force that was clearly excessive*, and (3) *the excessiveness of which was clearly unreasonable*." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009). The inquiries as to whether police

conduct was clearly excessive and clearly unreasonable often are intertwined. *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "***The objective-reasonableness inquiry is fact-intensive, requiring consideration of circumstances such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight***." *Galvan v. City of San Antonio*, 435 Fed.Appx. 309, 310–11 (5th Cir. 2010) (per curiam) (internal quotation marks omitted). "Officers may consider a suspect's refusal to comply with instructions … in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). When dealing with an uncooperative suspect, police act within the scope of objective reasonableness when they "react[ ] with measured and ascending responses." *Galvan*, 435 Fed.Appx. at 311.

Here, it is undisputed that Mr. Clark was experiencing a mental health crisis that caused him to behave violently and erratically. Ms. Ragland explained to the dispatcher that Mr. Clark had a history of mental illness and that he may have been under the influence of drugs. Ms. Ragland told the JPD officers that there was an altercation between Mr. Clark and James Kidd before they arrived. Per the AMR report, Mr. Clark was aggressive and fighting with the JPD Officers. AMR further explained that Mr. Clark was running and jumping on furniture. By all accounts, including the Plaintiffs, Mr.

7

Clark was uncontrollable and violent. Mr. Clark posed a threat to himself, law enforcement and others. In consideration of the circumstances, the JPD officers used only the force necessary to detain Mr. Clark. The autopsy report is clear that Mr. Clark suffered non-lethal blunt traumatic injuries consisting of abrasions on his face, wrists and ankles. Those injuries are inconsistent with Mr. Clark's cause of death.

The JPD officers' actions were objectively reasonable given Mr. Clark's erratic and violent behavior. The circumstances, including Mr. Clark's mental health crisis and aggressive actions, necessitated the use of force to detain him. For the Plaintiffs to prevail on their excessive force claim, they have to show that Mr. Clark's death resulted *directly and only from the use of force that was clearly excessive.* Plaintiffs cannot show through record evidence that Mr. Clark's death resulted directly and only from the actions of the JPD officers. Accordingly, the Plaintiffs' excessive force claim must be dismissed with prejudice.

**III.   The Plaintiffs' wrongful death claim must be dismissed with prejudice because Mr. Clark's death was ruled an accident due to Geodon toxicity.**

The Plaintiffs' claim for wrongful death against the City must fail because the City did not cause the death of Mr. Clark. A wrongful death action cannot be maintained unless the defendant's conduct is the cause of the decedent's death. *Phillips ex rel. Phillips v. Monroe County, Mississippi*, 311 F.3d 369, 374 (5th Cir. 2002). A wrongful death action requires a causal connection between the defendant's conduct and the decedent's death. As fully explained above, it is clear through record evidence that Mr. Clark died due to Geodon toxicity, not the actions of the City of Jackson, Mississippi, or any of its employees. Therefore, the Plaintiffs' wrongful death claim must be dismissed with prejudice.

**IV. Because JPD Officers did not use excessive force in apprehending Mr. Clark, the Plaintiffs' bystander liability claim must be dismissed with prejudice.**

For the reasons stated above, the JPD officers did not use excessive force during their encounter with Mr. Clark. Defendants may be held liable under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)(internal citations omitted). Accordingly, a bystander liability claim can only survive in cases of excessive force. See *Buehler v. Dear*, 27 F.4th 969,990 (5th Cir. 2022); See also *Crane v. City of Arlington, Texas*, 50 F.4th 453, 468 (5th Cir. 2022)(Bystanders may recover under § 1983 when they are subject to an officer's excessive use of force such that their own Fourth Amendment right is violated; however, bystanders cannot recover when they only witness excessive force used upon another.) Here, Mr. Clark's constitutional rights were not violated as discussed above. Therefore, the Plaintiffs' bystander liability claim fails and the City's Motion for Summary Judgment should be granted.

## CONCLUSION

The Plaintiff's Complaint must be dismissed with prejudice as there are no genuine issues of material fact. Firstly, the Plaintiffs' § 1983 claim against the City Defendants lacks a foundation as they have failed to establish the existence of a policy,

practice, or custom that was the moving force behind the alleged constitutional violation. The Plaintiffs have failed to provide evidence of such a policy or identify an official policymaker, rendering their § 1983 claim against the City baseless and deserving of dismissal with prejudice. Secondly, even if we were to assume, arguendo, that the Plaintiffs' § 1983 claim were to prevail, the JPD Officers acted in an objectively reasonable manner under the circumstances. The use of force was justified given Mr. Clark's uncontrollable and violent behavior during his mental health crisis. The JPD Officers' actions were well within the bounds of reasonableness, and the Plaintiffs cannot demonstrate a direct causal link between the use of force and Mr. Clark's unfortunate demise. Consequently, the excessive force claim should be dismissed with prejudice. Furthermore, the Plaintiffs' wrongful death claim must be dismissed with prejudice, as Mr. Clark's death was conclusively ruled an accident due to Geodon toxicity. A wrongful death action hinges on establishing a causal connection between the defendant's conduct and the decedent's death, which is absent in this case. The City of Jackson did not cause Mr. Clark's death, and thus, the Plaintiffs' wrongful death claim holds no merit. Lastly, given the absence of excessive force in apprehending Mr. Clark, the Plaintiffs' bystander liability claim must also be dismissed with prejudice. Bystander liability claims are only viable in cases of excessive force. Here, Mr. Clark's constitutional rights were not violated, and therefore, the Plaintiffs' bystander liability claim lacks a legal basis. In short, the facts and legal arguments presented overwhelmingly support the dismissal of this case with prejudice, and we respectfully request that the Court grant the City of Jackson Defendants' Motion for Summary Judgment in its entirety.

**WHEREFORE PREMISES CONSIDERED,** the Defendants respectfully request that this Court enter an order granting summary judgment in their favor, dismissing Plaintiff's Complaint with prejudice, and for such further relief consistent with this motion, general or specific, that this Court may deem appropriate.

RESPECTFULLY submitted this the 11th day of October, 2023.

**CITY OF JACKSON, MISSISSIPPI AND JAMES DAVIS**

By: /s/ Sheridan A. Carr
Sheridan A. Carr,  MSB #106276
Deputy City Attorney

**OF COUNSEL:**
**OFFICE OF THE CITY ATTORNEY**
455 East Capitol Street
Post Office Box 2779
Jackson, Mississippi 39207-2779
Telephone: 601-960-1799
Facsimile: 601-960-1756
*Attorney for the City of Jackson*

## **CERTIFICATE OF SERVICE**

I, Sheridan A. Carr, one of the attorneys for the Defendants, do hereby certify that I have served this day via Electronic Filing a true and correct copy of the above and foregoing to all counsel of record.

So certified, this the 11th day of October, 2023.

By: /s/ Sheridan A. Carr<br>
Sheridan A. Carr, MSB #106276